IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD EPSTEIN,                )<br>              Plaintiff,       )<br>                                          )<br>vs.                                   )<br>                                          )<br>PITTSBURGH SCHOOL DISTRICT and  )<br>SANDRA WESOLOWSKI,            )<br>              Defendants.    )  | Civil Action No. 10-1593<br>U.S. Magistrate Judge Maureen P. Kelly |

## OPINION

**KELLY, Magistrate Judge**

Plaintiff, Edward Epstein ("Epstein"), a former physics teacher at Perry Traditional Academy ("Perry"), has brought this civil action against Defendants Pittsburgh School District ("the School District") and Sandra Wesolowski ("Wesolowski"), an Assistant Principal at Perry, alleging that while employed with the School District he was discriminated against because of his age, race, religion and national origin which resulted in his being constructively discharged in April of 2009. Presently before the Court is Defendants' Partial Motion to Dismiss Amended Complaint. For the following reasons, the motion will be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, Epstein began teaching for the School District in 1999. In August of 2004, he was transferred from Westinghouse High School to Perry. [ECF No. 14-1 ¶¶ 5-6]. Epstein alleges that prior to the 2008-2009 school year, a position administering the Center for Advanced Studies ("CAS") physics classes became vacant and was awarded to a much younger, less senior teacher who had only worked at Perry for one year teaching math. [Id. at ¶¶ 9-11]. Epstein contends not only that he was the most suited for the position but that filling the position with a "rookie teacher" ran afoul of both the school's long established practice

of rewarding the more senior teachers with greater rights regarding course selection and schedules, and the Professionalism and Education Partnership Staff Selection Process which requires the Staff Selection Team to interview the top 25% of the most senior applicants and allows it to select the most senior applicant without going through the interview process.  [Id. at ¶¶ 12-18].  Epstein believes that Wesolowski and Jackie Blakey ("Blakey"), the Principal at Perry, made the decision to award the CAS position to a younger, less qualified teacher and that the decision reflects the animosity they held toward him as well as the age animus and anti-Semitic prejudices of Wesolowski.  [Id. at ¶¶ 8, 15, 19-21].

      Epstein further alleges that "[a]t one point during this school year," he presented an essay to Wesolowski that he needed her to sign-off on so that he could attend a course at Carnegie Mellon University.  [Id. at ¶ 22].  Apparently because Epstein had to translate the essay from one language to another, Wesolowski remarked that the essay "didn't sound right" and sent him to another teacher for assistance before she would sign it.  According to Epstein, Wesolowski's statement reflects her ethnic and religious prejudices and that she had stereotyped him as someone "who lacked professional command of English."  Id.

      On March 4, 2009, the administrators at Perry apparently learned that they were facing budget cuts for the next school year which could lead to the reduction of staff.  Epstein claims that, in an effort to circumvent basing layoffs solely on seniority, the Perry administrators decided to evaluate certain teachers and give them unsatisfactory ratings.  [Id. at ¶¶ 23-25, 27]. According to Epstein, the oldest and most senior teachers were targeted, including himself.  [Id. at ¶ 26].  Thus, on the same day that they learned of the budget cuts, Wesolowski and another Vice Principal entered Epstein's classroom to observe him and asked students whether Epstein "did anything with them."  [Id. at ¶¶ 27-28].  Epstein contends that Wesolowski not only

violated Article 59 of the Collective Bargaining Agreement for Teachers and Other Professional Employees ("CBA") by entering his class absent an emergency but that the intrusion undermined his authority and was calculated to justify an unsatisfactory rating. [Id. at ¶¶ 28-30]. Epstein alleges that at the end of the class he was informed that Wesolowski would also be observing him a second time later that day which was unprecedented and designed to substantiate an unsatisfactory rating as well. [Id. at ¶¶ 31-33]. In fact, Epstein claims that in the interim he approached his Instructional Teacher Leader, Mr. Bynum, and was told that Defendants had already planned to observe two of his classes and then place him on an Improvement Plan which, according to Epstein, usually precipitates an unsatisfactory evaluation and termination. [Id. at ¶¶ 34-36].

Epstein contends that in addition to targeting older teachers for evaluations, Defendants have exhibited prejudice against other Jewish teachers in the past and that the scheduling of a second observation on March 4, 2009, caused him to be overcome with anxiety. As a result, Epstein had an asthma attack and had to leave school for the remainder of the day. [Id. at ¶¶ 15, 26, 37-39]. On March 10, 2009, Epstein's physician placed him on medical leave through April 17, 2009, for severe anxiety and depression. Epstein contends that the treatment he received by Defendants "caused him to suffer mental and emotional distress and illness" and that, in essence, he was constructively discharged. [Id. at ¶ 40].

Consequently, prior to the end of his medical leave, Epstein submitted a retirement request to the School Board fearing that if he returned to work, he would be subjected to an intolerable hostile work environment and eventually terminated. [Id. at ¶ 41]. Epstein nevertheless returned from medical leave as scheduled on April 17, 2009, to finish out the school year. [Id. at ¶ 41]. Epstein complains that, despite the fact that he was cleared to return to work

3

by both his doctor and the School Board and that he was capable of teaching on his own, Defendants retained the substitute teacher that had been employed in his absence. [Id. at ¶ 42]. Epstein alleges that retaining the substitute was not only unprecedented under the circumstances but was a violation of the CBA and designed to monitor his activities. [Id. at ¶¶ 43-47].

Epstein allows that after he retired he was replaced by another "older" teacher and that he now works as a substitute teacher for the School District. [Id. at ¶¶ 48, 50].

Epstein filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, on August 23, 2010. On December 1, 2010, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. [ECF No. 1]. Epstein amended the complaint on January 5, 2011 [ECF No. 8], and Defendants filed a Partial Motion to Dismiss Amended Complaint [ECF No. 9] on January 19, 2011. On July 25, 2011, Epstein filed a Motion for Leave to File Second Amended Complaint [ECF No. 14-1], in order to attach the Notice of Right to Sue letter that he received from the Equal Employment Opportunity Commission ("EEOC") after the Amended Complaint had been filed. In all other respects, the Second Amendment Complaint was identical to the Amended Complaint, bringing claims against the School District for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 624, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 955, *et seq.* (Count I); claims against the School District and Wesolowski pursuant to 42 U.S.C. § 1983 for religious creed and national origin discrimination in violation of the First and Fourteenth Amendments (Count II); claims against the School District for religious discrimination under Title VII and the PHRA (Count III); and a claim for race discrimination against Wesolowski under 42 U.S.C. § 1981 (Count IV). Accordingly, the Court entered a text order on July 26, 2011, granting Epstein's motion for leave to file the Second Amended Complaint and advising the parties that because

Defendants' Partial Motion to Dismiss Amended Complaint had not been mooted by the amendment, it would be decided in due course.

Defendants' Partial Motion to Dismiss Amended Complaint [ECF No. 9], as applied to the Second Amended Complaint ("the Complaint"), is now ripe for review.

## II.    STANDARD OF REVIEW

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the United States Supreme Court held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. In assessing the sufficiency of the complaint, the Court must accept as true all allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. <u>Odd v. Malone</u>, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. <u>See</u> <u>California Public Employees' Retirement System v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004), <u>citing</u> <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations; rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. at 555, <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). <u>See</u>  <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under <u>Twombly</u>, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice; noting that the complaint "must allege facts suggestive of [the proscribed] conduct," and requiring plaintiff to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### III.   DISCUSSION

#### A.   Timeliness of Charge

Defendants initially argue that, to the extent Epstein's claims brought under the ADEA, Title VII and the PHRA are based on the denial of a CAS teaching position, they are properly dismissed as untimely since Epstein failed to file a charge of discrimination with the EEOC within 300 days of the employment action.  See Burgh v. Borough Council of Montrose, 251 F.3d 465, 469 (3d Cir. 2001) (A claimant who cross-files a charge of discrimination with a state or local agency has 300 days form the alleged unlawful employment practice to file a claim with the EEOC).  Indeed, Epstein has alleged in the Complaint that the decision to assign another teacher to the CAS class was made prior to the commencement of the 2008-2009 school year which, at the latest, would have been sometime in mid to late August 2008.  Epstein therefore was required to file a charge of discrimination with the EEOC sometime in June of 2009, but did not do so until November 29, 2009.  [ECF No. 14-1, ¶ 49].  Consequently, as Epstein has acknowledged, his claims brought under the ADEA, Title VII and the PHRA that are based on the denial of a CAS teaching position are untimely and properly dismissed.

#### B.   Constructive Discharge/Hostile Work Environment

Defendants also contend that Epstein's claim that he was constructively discharged from his job should be dismissed because it is based solely on the observation of his class on March 4, 2009, and the school administrators' stated intention to observe a second class later in the day. Because these incidents occurred within the span of a few hours, Defendants argue that they do not evidence either severe or pervasive discriminatory conduct.

In order to determine whether an employee can recover on a claim of constructive discharge the Court of Appeals for the Third Circuit utilizes an objective test.  Duffy v. Paper

Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001). "Specifically, a court must determine 'whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" Id., quoting Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998).  Thus, "[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3d Cir. 2006), quoting Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992), aff'd, 511 U.S. 244 (1994).  See Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 718 (3d Cir. 1997)  (finding that the necessary predicate to a claim of constructive discharge is that a hostile work environment existed when the plaintiff left his or her employment).

To establish that a hostile work environment existed, a plaintiff must show that: (1) he suffered intentional discrimination because of his membership in a protected class; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected him; (4) the discrimination would have detrimentally affected a reasonable person of the same class; and (5) the existence of *respondent superior* liability.   Abramson v. William Patterson Coll. of N.J., 260 F.3d 265, 276-77 (3d Cir. 2001).   See Faragher v. Boca Raton, 524 U.S. 775, 786 (1998), quoting Meritor Sav. Bank, FSP v. Vinson, 477 U.S. 57, 67 (1986) (finding that the conduct at issue must be so severe and pervasive so as to alter the conditions of the plaintiff's employment). Factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, Inc., 510 U.S. 17, 22 (1993).  See Whitesell v. Dobson Commc'n, 353 Fed. Appx. 715, 717 (3d Cir. 2009).  See also Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1161 (3d Cir. 1993) (noting

that many of the factors commonly cited by employees who claim to have been constructively discharged are being threatened with discharge; being urged to resign or retire; being demoted or receiving a reduction of pay or benefits; being transferred to a less desirable position; and an alteration of job responsibilities; and receiving unsatisfactory job evaluations).

Here, Epstein acknowledges that the events of March 4, 2009, ultimately triggered his alleged constructive discharge but contends that because they occurred in an already existing hostile work environment, he has plead sufficient facts to withstand Defendants' motion. Epstein argues that the hostile environment that existed prior to March of 2009 is evidenced by the fact several other older and Jewish teachers were treated in a discriminatory manner and that Wesolowski told him that his essay "didn't sound right."

Epstein's allegations concerning the discriminatory treatment of other older teachers, however, revolve around the events of March 4, 2009 as well, and thus, could not have contributed to a previously existing environment of hostility.   [ECF No. 14-1, ¶¶ 38, 59-60].

With respect to his claims that other Jewish teachers have been treated in a discriminatory manner, Epstein cites to four incidents that occurred between 2007 and 2009: "Rossman" was transferred to another school after his/her position at Perry was eliminated; an unnamed Home Economics teacher was let go after his/her position was eliminated; Mr. Ruben was transferred to another school after he complained about an anti-Semitic remark made by a speaker during an in-service training day presentation in August of 2007;  and "Dorfman," who remained at Perry, was targeted with false criticism and discipline. [ECF No. 14-1,  ¶¶ 67, 68, 72-75].   Even when coupled with Wesolowski's alleged remark that Epstein's essay "didn't sound right," the Court finds that these assertions are insufficient to state a plausible claim for hostile work environment.

As argued by Defendants, Epstein has not pled any *facts* to suggest that he or any of the

8

other teachers to which he refers, were intentionally discriminated against because of their age or religion. Rather, Epstein merely concludes as much simply because they were older and Jewish.

Similarly, Wesolowski's alleged statement is devoid of any reference to Epstein's religion, national origin or race and he has otherwise failed to allege that the statement was in anyway threatening or humiliating. Moreover, even if the remark could be interpreted as suggesting that Epstein lacked command of the English language or was somehow intended to be discriminatory, it appears from the Complaint to be no more than an isolated statement. See Wellman v. DuPont Elastomers L.L.C., 414 Fed. Appx. 386 (3d Cir. 2011), quoting Faragher v. Boca Raton, 524 U.S. at 788 ("'offhand comments, and isolated incidents . . . will not amount to discriminatory' behavior"); Whitesell v. Dobson Commc'n, 353 Fed. Appx. at 717, citing Racicot v. Wal-Mart Stores, Inc., 414 F.3d 675, 678 (7th Cir. 2005) ("isolated comments about [the plaintiff's] age . . . were not pervasive enough to create an objectively hostile work environment").

Epstein has also failed to allege any facts to support his conclusion that Dorfman was criticized and disciplined because he was Jewish or how the Defendants' actions in this regard contributed to a hostile work environment. Indeed, the Complaint fails to allege in what manner Dorfman was criticized and disciplined, for what reason, when or by whom.

Further, the fact that two teachers were transferred and another was let go over the span of two years, even when coupled with Wesolowski's alleged statement, hardly suggests discrimination so regular and pervasive so as to alter the conditions of Epstein's employment. Notably, Epstein has not alleged that the conditions of his employment were altered by any of these incidents, either individually or in conjunction with one another, or that they interfered with his work performance. As such, Epstein has failed to plead sufficient facts to support his

assertion that a hostile work environment existed prior to the events of March 4, 2009.

Nor do the events of March 4, 2009, serve to create a hostile working environment even when coupled with the incidents already discussed.  Not only is the observation of a teacher during class a seemingly benign occurrence but the fact that Epstein was observed and informed that a second observation would take place later in the same day does not significantly add to the severity or pervasiveness of the alleged discriminatory conduct.  Although Epstein makes much of Mr. Bynum's "confirmation" that Defendants intended to give him an unsatisfactory rating after a second review and put him on an Improvement Plan, none of those things actually occurred before Epstein submitted his retirement request.  Indeed, Epstein has not alleged that he was urged to retire, that he was ever demoted or received a reduction in pay, that he was transferred to a less desirable position or that his job responsibilities were ever altered.  While Epstein may have "feared" that he would be subjected to a hostile work environment if he returned to work, his subjective impressions of what might occur in the future are not only speculative but do not serve to create the hostile environment *preceding* his constructive discharge.[1]  Because the Court finds that Epstein's assertions in the Complaint are insufficient to raise the right to relief for hostile work environment above the speculative level it follows that they fall short of demonstrating an atmosphere that was so unpleasant and intolerable that a reasonable person would be forced to resign.  As such, Epstein has failed to state a plausible claim for constructive discharge and those claims are dismissed.

### C.     Sections 1983 and 1981

Finally, Defendants argue that the claims against Wesolowski brought under § 1983 and

---

[1] Although Epstein also argues that Defendants' unnecessary and improper retention of the substitute teacher and the monitoring his activities after he returned to work in April of 2009 contributed to the intolerable work environment, these events occurred after he submitted his retirement request and, thus, could not have contributed to the constructive discharge either.

§ 1981 should be dismissed because Epstein has failed to plead any facts to suggest that she was acting with a discriminatory purpose or state of mind.

"To state a § 1983 claim for denial of equal protection under the Fourteenth Amendment, plaintiff must allege that he is a member of a protected class, similarly situated to members of an unprotected class, and treated differently from the unprotected class." Young v. New Sewickley Twp., 160 Fed. Appx. 263, 266 (3d Cir. 2005), citing City of Cleburne, Tex v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Moreover, to succeed on a claim brought under either § 1981 or § 1983, plaintiff must prove that the discrimination was purposeful.  Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 268 (3d Cir. 2010); Chamber ex rel Chambers v. School Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009).

Epstein does not dispute that he must ultimately demonstrate that Wesolowski acted with a discriminatory state of mind but argues that he has met his pleading burden having alleged that Wesolowski exhibited her discriminatory animus when she said that Epstein's essay for his course application "didn't sound right;" when she scheduled two observations in one day which was unprecedented; when she questioned students about Epstein's performance while a class was in session; by determining prior to observing Epstein that he would be put on an Improvement Plan; and by retaining the substitute teacher after he returned from medical leave.  Epstein claims that these assertions demonstrate that Wesolowski treated him differently from other similarly situated teachers without a rational basis.

The difficulty with Epstein's argument, however, is that, even if these facts demonstrated that Wesolowski treated him differently from other teachers, it does not show that she treated him differently because of his religion, national origin or race.  Rather, Epstein merely draws that conclusion which invites the Court to speculate that he has a right to relief on his claims of

discrimination against Wesolowski.

Epstein also argues that Wesolowski's discriminatory animus is evident from the fact that between 2007 and 2009, all of the Jewish teachers were either forced to leave Perry or were made the target of false criticism and discipline. Specifically, Epstein cites to his allegations in the Complaint that Mr. Ruben was transferred to Schenley High School after he complained about the anti-Semitic remark made by the presenter at the in-service training class in 2007; that Rossman and an unnamed Home Economics teacher were informed that their services were no longer needed; and that Dorfman was targeted with false criticism and discipline. [ECF No. 14-1 ¶¶ 71-75].

Epstein, however, has failed to allege that Wesolowski was behind the decisions to remove Ruben, Rossman or the Home Economics teacher from Perry or that she participated in the criticism or scrutiny of Dorfman. In fact, Epstein has alleged in the Complaint that Ruben was transferred after he complained to *Blakely* about the anti-Semitic remark and that *Blakely* failed to take responsibility for the statement. In addition, Epstein has alleged that Rossman and the Home Economics teacher were discharged from Perry because their positions were being eliminated, not because they were Jewish, and Rossman was actually transferred to another High School rather than being let go.

Lastly, with respect to Dorfman, Epstein has not alleged any facts which would suggest that he was criticized or disciplined or treated differently from similarly situated teachers because he was Jewish. The Complaint is equally devoid of any information regarding who the similarly situated persons at issue are or in what manner Dorfman was treated differently than they were. See Keefer v. Durkos, 371 F. Supp. 2d 686, 696 (W.D. Pa. 2005). Thus, the Court is again asked to speculate that Wesolowski took the actions complained of, that other similarly

situated persons were treated differently and that she acted with a discriminatory purpose. Because under Twombly and its progeny the right to relief must be more than speculative, Epstein has failed to state a plausible claim against Wesolowski.

For the reasons set forth above, the claims brought against Wesolowski at Counts II and IV are properly dismissed with prejudice.

## IV.  CONCLUSION

For the above stated reasons, Defendants' Partial Motion to Dismiss Amended Complaint [ECF No. 9] will be granted. An appropriate Order follows.

/s/ Maureen P. Kelly
United States Magistrate Judge

Dated: September 19, 2011

cc:   All Counsel of Record via CM-ECF